AO 243  (Rev. 2/95)

**MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| United States District Court | District Eastern District of Washington |
|---|---|
| Name of Movant: Carrie Lee Aenk | Prisoner No. 08013-045 / Case No. CR-96-100-RHW |
| Place of Confinement: Supervised Release | FILED IN THE U.S. DISTRICT COURT EASTERN DISTRICT OF WASHINGTON FEB 15 2005 JAMES R. LARSEN, CLERK ____ DEPUTY SPOKANE, WASHINGTON |

UNITED STATES OF AMERICA  v.  Carrie Lee Aenk
(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack _____
   United States District Court Eastern District of Washington

2. Date of judgment of conviction  October 10, 1996

3. Length of sentence  Thirty-three months

4. Nature of offense involved (all counts)  Bank Fraud Causing Criminal Acts, 18 U.S.C. §§ 1344(1) and 2(b)

5. What was your plea? (Check one)
   (a) Not guilty  ☐
   (b) Guilty  ☒
   (c) Nolo contendere  ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:
   N/A
   N/A
   N/A

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury  ☐
   (b) Judge only  ☒

7. Did you testify at the trial?
   Yes ☐   No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒   No ☐

(2)

9. If you did appeal, answer the following:

   (a) Name of court __Ninth Circuit Court of Appeals__

   (b) Result __Agreed with sentencing Judge__

   (c) Date of result __Do not Know__

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?
    Yes ☒   No ☐

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court __United States District Court Eastern District of Washington__

    (2) Nature of proceeding __Motion under 28 U.S.C. §2255 To Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody__

    (3) Grounds raised __Conviction obtained by coerced confession, Conviction obtained by a violation of the privilege against self-incrimination, Denial of effective assistance of counsel__

    (4) Did you receive an evidentiary hearing on your petition, application or motion?
    Yes ☐   No ☒

    (5) Result __Denied__

    (6) Date of result __Do not know (see Ct. Rec. 68)__

    (b) As to any second petition, application or motion give the same information:

    (1) Name of court __United States Supreme Court__

    (2) Name of proceeding __Writ of certieri__

    (3) Grounds raised __Conviction unConstitutional, Conviction obtained by coerced confession, Conviction obtained by a violation of the privilege against self-incrimination, Denial of effective assistance of counsel__

AO 243 (Rev. 2/95)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☒

(5) Result  Denied

(6) Date of result  June 1999

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.    Yes ☒    No ☐
(2) Second petition, etc.  Yes ☐    No ☒

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

Cannot go higher than the U.S. Supreme Court unless one applies for a Presidential Pardon.

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.
Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of these grounds.
(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.

(4)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: __Newly Discovered Evidence__
   __See Attached Affidavits__

Supporting FACTS (state *briefly* without citing cases or law): On or about February 18, 2004, Eric Wright telephonically contacted the Defendant at her home at about 10:30 p.m. (pst). The telephone conversation was recorded, wherein Eric Wright confessed to setting up the Defendant for the original crime. About two days later, Defendant recorded a conversation with Verna Weber, who heard Mr. Wright brag about the set up. Several family members have agreed to write statements since Mr. Wright has bragged about the set-up to many family members.

Supporting FACTS (state *briefly* without citing cases or law): _____

C. Ground three: _____

Supporting FACTS (state *briefly* without citing cases or law): _____

D.  Ground four: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

_____

_____

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
    Yes ☐    No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

   (a) At preliminary hearing  Steve Hormel   Federal Defenders of Eastern Washington and Idaho  10 N. Post, Spokane, WA

   (b) At arraignment and plea  Steve Hormel   same as above

   (c) At trial  Steve Hormel   same as above

   (d) At sentencing  John Leoffler   Do not know address

(e) On appeal  C.C. Glenn  Do not know address

(f) In any post-conviction proceeding  Self - Pro se

(g) On appeal from any adverse ruling in a post-conviction proceeding  Self - Pro se

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☐   No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐   No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future:  N/A

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐   No ☒

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

February 14, 2005
Date

Carrie L. Aenk
Signature of Movant

(7)

## AFFIDAVIT OF TELEPHONE CONVERSATION
## CONFESSION OF ERIC WRIGHT

On or about February 18, 2004, Eric Wright telephonically contacted Carrie Aenk at her home at about 10:30 p.m. PST and states the following:

Eric Wright (hereinafter known at Wright) clearly identifies himself at the beginning the conversation.,

Carrie Aenk (hereinafter known as Aenk)

Approx. 2 ½ minutes of conversation concerning family matters.,

Wright: I've been there before...so

Aenk: You've been where?

Wright: I've been...I've been in a safe-house before.

Aenk: Really..How come?

Wright: With people after me, trying to kill me

Aenk: Really!

Wright: yeah. It's kind of a long story

Aenk: Did it have something to do with the guy that you shot just before you...you had me arrested?

Wright: Yeah...yeah...so

Aenk: Oh! Wow!

Wright: Yeah...the FBI stuck us...shoot, we were gone for two months

Aenk: Really!

Wright: Yeah

Aenk: Us. You mean, you and Kathy?

Wright: Yeah, me and Kathy and her mom and uh, both my step-daughters and my granddaughter...laugh

Aenk: Wow

Wright: yeah

Aenk: Did they take good care of ya?

Wright: Well, not really

Aenk: Was that when you made the deal with them to have me set up?

Wright: No.

Aenk: How did that come about anyway?

Wright: They...uh...when they called me...the guy...a guy from Tulsa called me...the FBI guy and he said that, uh, people were after you and unless they caught you then you were going to be hurt. So...I said well...I'm kinda ashamed of it now...laugh...

Aenk: So that was when you set me up?

Wright: yeah

Aenk: Okay. I guess I'm just not understanding...cause I was told that you told the family that I hit a jailer over the head...

Wright: What?

Aenk: ...and almost killed him and escaped so I was on Americas Most Wanted.

Wright: Oh no!...laugh

Aenk: I don't remember which family member told me that.

Wright: Probably Aunt Vonnie, I'll bet...laugh

Aenk: But it was like...you know...uh...that's not the truth.

Wright: Sounds like something Aunt Vonnie would say

Aenk: Aunt Vonnie doesn't even know me

Wright: laugh...no...that's uh...no. I've never said anything like that...laugh...no...that's exactly what happened...I got a call from the FBI and said that you had conned somebody, like a mobster or something and they were out to get ya.

Aenk: What?

Wright: And uh, and if I helped 'em get you then you'd be safe

Aenk: So, you set me up and I got arrested and all that stuff

Wright: yeah. So you'd be safe...and I found out later they were lying to me

Aenk: Imagine that, huh.

Wright: yeah

Aenk: yeah well, we found out in court they were lying, too

Wright: yeah

Aenk: So...Can you remember the feds name at all?

Wright: Ohh....no, I sure can't.

Aenk: But you say he's from Tulsa?

Wright: yeah, he was from Tulsa

Aenk: Hmm, that is like so bizarre

There was about 15 seconds of small talk

Wright: That sounds like Aunt Sherry, she's wacko, paranoid, schizophrenic oh yeah...

Aenk: eeeew

About 60 seconds of small talk about family members

Aenk: Did dad have anything to do with me getting set up?

Wright: Dad?...No

Aenk: It was just you?

Wright: yeah, it was just me

Aenk: So, you were just acting solo?

Wright: I take the blame for all that. Yeah

Aenk: Wow! That's quite the burden to be carrying all these years

Wright: Yeah. Yeah. Dad didn't have anything to do with it. Dad didn't know anything about it...so

Aenk: wow...cause I remember...

Wright: It was...they called me up. I mulled it around for awhile...I figure...uh...you hatin' my guts and bein' alive was a lot better than you bein' dead...so...but then I discovered that they were lying to me...so...

Aenk: And so I go set up for nothing, huh?

Wright: yeah

Aenk: Well, ya know, that was a long time ago...and...ya know Eric, I don't hate you...okay

Wright: Well, I'm sure happy to hear that

Aenk: Well, I...

Wright: I had it figured that you probably would...laugh

Aenk: I hate what you...

Wright: I wouldn't blame you either...so

Aenk: I hate what you did, but I don't hate you

Wright: yeah

Aenk: You know, but I'll tell you what, God has a reason and God has a plan and He definitely grew me up...and um...while I was down...

About three to five minutes about prison and life's going's on and the conversation ended.

This Affidavit of Facts is true ad factual to the best of Carrie Aenk's knowledge under the penalty of perjury involving the statutes, laws and RCW's for the United States and Washington State laws.,

So Signed this 12th day of February, 2005.,

*Carrie L. Aenk*
Carrie L. Aenk

## AFFIDAVIT OF TELEPHONE CONVERSATION
## VERNA WEBER

Carrie Aenk (hereinafter known as Carrie) telephonically called and spoke to Verna Weber,(hereinafter known as Verna) Carrie Aenks maternal grandmother.,

First two - three minutes of information about a family member.

Carrie: I'm surprised Eric didn't call you

Verna: No, He didn't call me

Carrie: 'Cause Eric called me, ohhh, last night or four or five days ago-ish or something like that and, um, I told him basically the same thing.

Verna: Oh you better be careful of him

Carrie: That's what I heard! Why do you say that?

Verna: Well, Eric, Eric, uh, actually had you arrested

Carrie: I know, I know that

Verna: Okay, I mean, he said he was working with the FBI and he's bragging about working with the FBI so I would sure be careful

Carrie: yeah-I don't trust Eric. Eric knows I don't trust him. I told him I don't trust him.

Verna: Oh

Carrie: Ya know, and I told him, you know, the past is the past

Verna: Yeah

Carrie: I don't hate him. I don't hate him for what he did

Verna: mmhhm

Carrie: I hate what he did

Verna: Yeah

Carrie: But I don't hate him for it

Verna: Yeah

Carrie: I believe the man needs help

Verna: Yeah

Carrie: and

Verna: Well, I know Sherry was back there and she had her purse stolen and she couldn't get on a carrier because she didn't have an I.D...

Carrie: uh huh

Verna: ...and she called and wanted to us their (Eric and his wife) address. She couldn't get an I.D. unless she had an address...

Carrie: uh huh

Verna: ...and they (Eric and his wife) wouldn't let her do it.

Carrie: What?

Verna: Yeah! So, I mean, just be careful of Eric.

Carrie: I appreciate that. I really do.

Verna: I mean, I, these are only things I know he was bragging about being with the IRS and that he helped, I mean FBI and so he's bragging about that and he sort of bragged that he had something to do with your case.

Carrie: Oh yes, he has something to do with my case alright. He's the one who set me up in the case, admittedly so.

Verna: uh huh

Carrie: Is that what he admitted to you?

Verna: Well, I can't, it's been so long ago really, I really can't remember exactly what was said


but he was very definitely bragging about being with the IRS...FBI...FBI, I'm saying it wrong.

You know I get 'em wrong.

Carrie: Um, I totally understand

About 30 seconds talk about information about a family member.

This Affidavit of Facts is true and factual to the best of Carrie Aenk's knowledge under the penalty of perjury involving the statutes, laws and RCW's for the United States and Washington State laws.,

So Signed this 12th day of February, 2005.,

*Carrie L. Aenk*
Carrie L. Aenk